UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                         :

DANIEL CAVAZZINI,                         :       21-CV-5087 (ARR) (ST)
                         :

              Plaintiff,         :       <u>NOT FOR ELECTRONIC</u>
                         :       <u>OR PRINT PUBLICATION</u>

    -against-                       :
                         :       <u>MEMORANDUM AND</u>
MRS ASSOCIATES and CROWN ASSET    :       <u>ORDER</u>
MANAGEMENT,                   :
                         :

             Defendants.        :
                         :
----------------------------------------------------------------- :
                         X

ROSS, United States District Judge:

Plaintiff, Daniel Cavazzini, originally brought this action in the District Court, Sixth Division, Suffolk County, against defendants MRS Associates ("MRS") and Crown Asset Management ("Crown"). Plaintiff brings causes of action under the Federal Debt Collection Practices Act ("FDCPA") alleging that defendant Crown violated his privacy by communicating his personal and/or confidential information to MRS in order to collect a debt plaintiff purportedly owed to Crown, in violation of FDCPA §§ 1692c(b) and 1692f, and that defendants engaged in false, deceptive, or misleading representations or means in order to collect the debt, in violation of FDCPA §§ 1692e, 1692e(2)(A), and 1692e(10) and New York General Business Law ("NYGBL") § 349.

Defendants removed the action to this court, asserting that this court has original jurisdiction over plaintiff's FDCPA claims and supplemental jurisdiction over the NYGBL claim. Now before the court is plaintiff's motion to remand the action to state court. For the reasons set forth below, I find that plaintiff does not have Article III standing and remand the case to the District Court, Sixth Division, Suffolk County.

## BACKGROUND

The FDCPA "create[d] a private right of action for debtors who have been harmed by abusive debt collection practices." *Benzemann v. Citibank, N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) (citation omitted). Section 1692c of the FDCPA limits the individuals and entities with which a debt collector[1] may share information in order to collect a debt.[2] *See* 15 U.S.C. § 1692c(b) ("[A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.").[3] Section 1692e prohibits debt collectors from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." *Id.* § 1692e. Specifically, a debt collector may not falsely represent "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A), or use "any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10). Section 1692f similarly provides that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f. In a similar vein, NYGBL § 349 created a private right of action against any "person, firm[, or] corporation" that engages in "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service." NYGBL § 349(a), (b).

---

[1] The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

[2] The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

[3] "Communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

2

On August 17, 2020, plaintiff received a "dunning" letter from MRS, a mailing vendor, on behalf of Crown, a debt collector.[4] *See* Not. of Rem., Ex. A ("Compl.") ¶¶ 13–46, 79, 84–85 & Ex. 1, ECF No. 1. The letter sought payment of a debt of $7,936.72 on behalf of Crown, as the debt—originally owed to Synchrony Bank ("Synchrony")—was now owned by Crown. *Id.* ¶¶ 48, 84–85 & Ex. 1. Plaintiff asserts that Crown hired MRS to attempt to collect plaintiff's alleged debt and, in doing so, unlawfully "conveyed information regarding the alleged [d]ebt to MRS." *Id.* ¶¶ 79–80. Plaintiff also claims that he did not owe, and has never owed, money to Crown and that he has never done business with Crown, nor has Crown extended credit to him. *Id.* ¶¶ 50–57. Plaintiff further alleges that he was never told Crown had taken over his debt and, on information and belief, that Crown possesses no "competent" proof that the debt was transferred to it. *Id.* ¶¶ 58–75.

Plaintiff claims he was "misled by [d]efendants' conduct," and as a result he "wasted time, was caused to be confused and unsure as to [his] rights," and risked incurring fees and other damages by seeking counsel. *Id.* ¶¶ 95, 101. Plaintiff further asserts that he now fears defendants will "continue to use abusive, deceptive, unfair and unlawful means in [their] attempts to collect" his debt, "will ultimately cause [him] unwarranted economic harm" and harm to his credit rating, and will sue him for a debt he does not owe. *Id.* ¶¶ 97–100.

Plaintiff brings three causes of action under the provisions enumerated above. Plaintiff first alleges Crown violated 15 U.S.C. §§ 1692c(b) and 1692f by communicating with MRS about plaintiff's debt and disclosing to MRS plaintiff's personal and/or confidential information (his name, address, and debt amount)—communications to which plaintiff did not consent. Compl. ¶¶ 106–29. Plaintiff further alleges defendants violated several subsections of 15 U.S.C. § 1692e and NYGBL § 349 by representing to plaintiff that he owed a certain amount of money to Crown, a representation plaintiff alleges was false

---

[4] All facts are taken from plaintiff's complaint, Notice of Removal, Ex. A ("Compl.").

because he neither owed that specific amount nor owed Crown a debt. *Id.* ¶¶ 130–56.

Plaintiff filed suit in New York state court on August 13, 2021, Not. of Rem. 1 & Compl., ECF No. 1, and served the Complaint on defendants on or about September 1, 2021. Barshay Decl. ¶ 3, ECF No. 5. On September 13, 2021, defendants filed a Notice of Removal with this court, alleging that removal was proper because this court has original jurisdiction over claims arising out of federal statutes. Not. Rem. 2–3.

On September 15, 2021, plaintiff moved to remand this action to state court. ECF Nos. 4–6. Plaintiff argues that remand is necessary because defendants' Notice of Removal is "completely silent" as to whether plaintiff has standing, and—under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which recently addressed Article III standing in consumer law cases—defendants have failed to carry their burden of showing federal subject matter jurisdiction exists. Mem. of Law in Supp. of Pl.'s Mot. for Remand 5–6 ("Pl.'s Mem."), ECF No. 6. In opposition, defendants argue that they have demonstrated subject matter jurisdiction because "Plaintiff's complaint is based upon the violation of a Federal Statute" and the complaint "alleges Article III standing and a concrete injury despite the fact that it was filed in State Court." Mem. of Law in Opp. to Pl.'s Mot. for Remand 5–6 ("Defs.' Mem."), ECF No. 7.

## DISCUSSION

### I.    Legal Standard

A defendant can remove a civil action from state to federal court if the latter has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

An essential element of a federal court's subject matter jurisdiction is standing. To have standing, plaintiff must prove that: (1) he has suffered a "concrete and particularized injury";

(2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff must demonstrate standing for each claim he asserts. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

In a case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c) . . . give no discretion to dismiss rather than remand an action." (citation omitted)). A district court considering a motion to remand must "construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (citation omitted). "In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).[5] Defendant bears the burden of establishing that removal is proper. *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004).

## II.     Plaintiff Does Not Have Standing to Proceed in Federal Court

Because I do not have jurisdiction over cases brought without proper standing, I must decide whether plaintiff has standing before this case can proceed. *See All. for Env't Renewal, Inc. v. Pyramid*

---

[5] Plaintiff appears to interpret *In re MTBE Product Liability Litigation* to preclude me from looking to the complaint in addressing this jurisdictional question. *See* Pl.'s Mem. 5–6 (emphasizing the Notice of Removal's "silence" on standing). The complaint is attached to the notice of removal, however, and the notice as a whole (including its attachments) is the basis for evaluating the propriety of removal. *See, e.g., Cruz v. Stop & Shop Supermarket Co. LLP*, No. 15-CV-1372 (KNF), 2015 WL 8481678, at *4 (S.D.N.Y. Oct. 28, 2015) (evaluating propriety of removal based on "[t]he notice of removal, *with its attached documents*" (emphasis added)); *Correnti v. Bertram D. Stone Inc.*, No. 13-CV-3698 (KBF), 2013 WL 5231863, at *3 (S.D.N.Y. July 17, 2013) (considering attachments to notice of removal in denying removal).

*Crossgates Co.*, 436 F.3d 82, 87 (2d Cir. 2006) ("Article III standing must be decided before the merits."). To have standing in federal court, plaintiff must demonstrate, *inter alia*, that he suffered "an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion*, 141 S. Ct. at 2203. As the Supreme Court recently explicated in *TransUnion*, simply citing a statutory violation does not satisfy this requirement. *Id.* at 2205. Plaintiff must have suffered real adverse effects beyond the "procedural violation" of the statute. *Id.* at 2213 (citation omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'" (citation omitted)). Pleading a risk of future harm is insufficient unless plaintiff either claims that there is a "sufficient likelihood" that this harm will materialize or that he was "independently harmed by [his] exposure to the risk itself" (*e.g.*, suffered an emotional injury from knowledge of the risk). *TransUnion*, 141 S. Ct. at 2211–12.

When the claimed injury is physical, monetary, or a traditional intangible harm like emotional distress, concreteness is easily established. But when, as here, plaintiff pleads an intangible statutory injury, I must look to both history and the judgment of Congress to determine whether the harm is concrete. *Spokeo*, 578 U.S. at 340; *see also TransUnion*, 141 S. Ct. at 2204. The historical inquiry asks whether the alleged harm has a "close relationship" to a historical or common-law cause of action. *TransUnion*, 141 S. Ct. at 2204. The *TransUnion* Court clarified, however, that, "[i]n looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." *Id.* at 2209. When determining Congress's judgment, "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* at 2204. Congress's choice alone, however, cannot confer standing. *Id.* at 2205 (citation omitted).

6

The Eleventh Circuit recently applied these principles to FDCPA claims resembling those presented here in a now-vacated opinion. In *Hunstein v. Preferred Collection and Management Services, Inc.*, 17 F.4th 1016 (11th Cir. 2021), *rehearing en banc granted*, *opinion vacated*, 17 F.4th 1103 (Mem.), the plaintiff had sued a debt collector for transmitting to a mailing vendor the plaintiff's name, outstanding debt balance, the fact that the debt resulted from the plaintiff's son's medical treatment, and his minor son's name. *Id.* at 1021. The vendor used the data to create, print, and mail a dunning letter to the plaintiff. *Id.* The court of appeals concluded that the plaintiff's § 1692c(b) claim alleged a harm similar in kind[6] to the common-law tort of public disclosure of private facts, a subset of invasion of privacy, because both violations involve disclosing private information to a third party. *Id.* at 1023–28. The panel reasoned that since disclosing information about the plaintiff's debt and the medical treatment behind the debt solely to the mailing vendor's employees was a harm of the same kind as that covered by the traditional tort, it did not matter that the disclosure was significantly "less widespread—less public—than the disclosures typical of actionable public-disclosure-of-private-facts-claim"; it was enough that "*some . . .* disclosure *. . .* occurred." *Id.* at 1027–28. The court also noted that Congress identified invasions of individual privacy as "one of the harms against which the statute is directed," indicating that "the judgment of Congress also favor[ed]" the plaintiff. *Id.* at 1032 (citing 15 U.S. § 1692(a)).

A court in this district, by contrast, has recently dismissed—in several consolidated cases—similar claims alleging FDCPA violations arising out of the provision of data by debt collectors to

---

[6] The circuit courts that have applied the "close relationship" standard since *TransUnion* have interpreted it to require that the intangible harm be "similar in kind to the harm addressed by a common-law cause of action," not "similar in degree." *Hunstein*, 2021 WL 4998980, at *5 (italics omitted); *see also Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) (same). The Second Circuit has yet to take a position on the application of the standard.

mailing vendors for the preparation and sending of dunning letters.[7] *See In re FDCPA Mailing Vendor Cases*, Nos. 21-CV-2312, 21-CV-2587, 21-CV-3002, 21-CV-3383, 21-CV-3434 & 21-CV-3462 (GRB), 2021 WL 3160794, at *5–7 (E.D.N.Y. July 23, 2021);[8] *see also Shields v. Pro. Bureau of Collections of Md., Inc.*, No. 20-CV-2205 (HLT), 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021) (finding a similar alleged injury not analogous to public disclosure of private facts).[9] There, the court dismissed the § 1692c(b) information claims because it found no traditional common-law tort analogous to this alleged injury: sharing such information was not akin to defamation, was too *de minimis* to resemble an invasion of privacy, and "simply mailing a collection letter, even if erroneous, is a far cry from 'extreme and outrageous conduct,'" as required for intentional infliction of emotional distress. *Id.* at *6 (citing *Conboy v. AT&T Corp.*, 241 F.3d 242, 258–59 (2d Cir. 2001)). As relevant here, the court held that sharing information with a third party about debts ranging from $25.00 to $482.28 was too *de minimis* to be analogous to an invasion of privacy because the information shared was unlikely to constitute a "matter publicized of a kind that would be highly offensive to a reasonable person."[1] *Id.* at *6 (citation and modifications omitted). Regarding the plaintiffs' § 1692e deceptive practices claims, the court concluded that plaintiffs failed to "allege any *actual* injury from receiving the purportedly false notice." *Id.* at 7 (emphasis added).

Here, plaintiff makes similar claims. I also find plaintiff does not have standing.

---

[7] The cases decided in *In re FDCPA Mailing Vendor Cases* were all originally filed in federal court, so remand was not available to the court.

[8] The reasoning in this case provided the basis for dismissal in several subsequent FDCPA cases before the same court. *See, e.g., Bush v. Optio Sols., LLC*, No. 21-CV-1880 (GRB), 2021 WL 3201359 (E.D.N.Y. July 28, 2021); *Barbero v. Transworld Sys. Inc.*, No. 20-CV-506 (GRB) (E.D.N.Y. Oct. 4, 2021) (Minute Entry); *Williams v. Credit Corp. Sols., Inc.*, No. 21-CV-5729 (GRB) (E.D.N.Y. Oct. 26, 2021) (Minute Entry); *Luisi v. Portfolio Recovery Assocs., LLC*, No. 21-CV-5725 (GRB) (E.D.N.Y. Nov. 16, 2021), ECF No. 14.

[9] As discussed above, the Eleventh Circuit decision coming the opposite conclusion has been vacated, which suggests the en banc court may disagree with the panel.

### A. Plaintiff does not have standing for his FDCPA § 1692c(b) claim.

Plaintiff first argues that by communicating his confidential information to MRS, Crown violated FDCPA § 1692c(b)'s restriction on a debt collector's communicating with entities other than the consumer. Compl. ¶¶ 106–29. Plaintiff asserts in his complaint that a violation of § 1692c(b) is akin to an invasion of privacy. *Id.* ¶¶ 121–25. While New York does not have a common-law right against invasion of privacy, the traditional tort comprises four separate privacy causes of action: public disclosure of private facts, false light, intrusion upon seclusion, and appropriation of likeness. Restatement (Second) of Torts § 652A (Am. Law Inst. 1977). My analysis focuses on public disclosure of private facts as the tort closest to the injuries pleaded in plaintiff's complaint.[10]

As New York does not have a common law right to privacy, I look to the Restatement as a guide in carrying out *TransUnion*'s historical common law analysis. According to the Restatement, "one who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement, *supra*, § 652D. For the tort to apply, the defendant must make the matter public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge"; it is not enough to "communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Id.* cmt. a.

Applying the above principles, I find that sharing information about a debtor with a third-party mailing vendor is not analogous to an invasion of privacy. Critically, the privacy injury alleged

---

[10] The other three sub-categories are not similar in kind to the injury alleged here: false light requires the statement to be false, Restatement, *supra*, § 652E; intrusion upon seclusion requires the *intrusion* to have caused an injury, not a subsequent disclosure of the information gained from the intrusion, *see id.* § 652B; *see also, e.g.*, *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 837–38 (N.D. Ill. 2009); and nothing resembling an appropriation of a likeness has occurred in this case.

here does not involve publicity. Nothing in the complaint alleges—and nothing about the facts suggests—that communicating the debtor's information to the vendor made that information available to the broader public, or even a large group of people. Indeed, the Restatement cites a similar fact pattern as here as an example of what is *not* a public disclosure of private facts: "A, a creditor, writes a letter to the employer of B, his debtor, informing him that B owes the debt and will not pay it." *Id.* cmt. illus. 1. This example accords with the common law, under which "a creditor did not violate a debtor's right to privacy when it informed employers of an employee's debt." *Hunstein*, 17 F.4th 1016 (Tjoflat, J., dissenting). Nor were common-law courts troubled when such a communication "pass[ed] through the hands of clerks or stenographers, whether in the employ of the writer or the addressee." *Id.* (quoting *Patton v. Jacobs*, 78 N.E.2d 789, 792 (Ind. App. 1948)). If informing an employer of an employee's debt—arguably far more sensitive than having an entity process one's basic debt information for the purpose of populating and sending a letter—is not a public disclosure of private facts, the injury alleged here can hardly be "closely related" to the tort.

I also find the above to be consistent with evidence of congressional intent. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As the Second Circuit has explained,

> [t]he legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."

*Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95–382, at 2 (1977)). The third-party communications listed above involve debt collectors' reaching out to third

10

parties—friends, neighbors, and employers—whose knowledge of the debt would likely embarrass a reasonable person. Thus, it appears Congress intended to target certain especially harmful debt collection practices—not all communications by debt collectors to third parties. This conclusion is further supported by the fact that the drafters of the FDCPA were also responding to the common-law background. The drafters explicitly countered common-law courts' disinterest in debt-related communications to employers by specifically prohibiting certain communications to debtors' employers. *See* 15 U.S.C. § 1692c(a)(3). The drafters did not, however, similarly single out stenographers or clerks, despite their frequent involvement in preparing and sending written communications. In many ways, a mailing vendor is a modern-day stenographer or clerk, briefly viewing the information for the purpose of creating and/or processing a communication. At any rate, its delimited role is closer to that of a stenographer or clerk than that of an employer, whose knowledge of an employee's debt (and authority over the employee) could result in economic and/or reputational consequences for that employee. In sum, passing on a debtor's information to a company for the sole purpose of creating a mailing does not appear to be one of the "unfair, deceptive, or harassing behavior[s]" the FDCPA is meant to target, *Kropelnicki*, 290 F.3d at 127.

Plaintiff therefore does not have Article III standing for his § 1692c(b) claim.

**B. Plaintiff does not have standing for his FDCPA § 1692e claim.**

Plaintiff next alleges that defendants engaged in "abusive, deceptive, unfair, and unlawful" means to collect the debt—namely asserting to plaintiff that he owes a debt he does not owe—thereby violating FDCPA §§ 1692e, 1692e(2)(A), and 1692e(10). Compl. ¶¶ 130–44.

Here, plaintiff alleges both past injuries and a risk of future harms. As to past injury, plaintiff avers that defendants deprived him of his right to be free from "unwarranted threats to [his] credit rating" and "deceptive and/or misleading communications from debt collectors." Compl. ¶¶ 89, 91, 90–91. These assertions hinge on plaintiff's claim that he does not owe a debt

to defendants. There are two problems with that claim, however. First, plaintiff addresses only Crown's assertion that it currently owns the alleged debt. Plaintiff does not plead any facts about Synchrony, which is listed as the original holder of the alleged debt on the appended dunning letter. In *In re FDCPA Mailing Vendor Cases*, the court noted that the plaintiffs' claims not to have relationships with the debt collectors did not seem "facially plausible" when the collection notices appended to the complaints identified an original creditor. 2021 WL 3160794, at *7. Similarly here, without plaintiff's pleading that he never owed a debt to Synchrony, he has not persuasively pleaded that he does not have a relationship with Crown, because the dunning letter states that the debt has been transferred from Synchrony to Crown. *See* Compl., Ex. 1. Second, plaintiff's claim that Crown has no "competent" proof that it owns the alleged debt is based upon information and belief, but plaintiff does not detail the information upon which that statement is based. To be sure, "matters peculiarly within a defendant's knowledge may be pled 'on information and belief,'" but "this does not mean that those matters may be pled lacking any detail at all." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (citation omitted)).

Plaintiff further alleges that defendants' conduct caused him to "waste[] time," "be confused and unsure as to [his] rights," and risk incurring damages by seeking legal advice. Compl. ¶ 101. None of these alleged injuries supports standing. Courts have found wasted time to support standing when the wasted time is inextricably bound up in a cognizable injury. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, No. 21-336, 2021 WL 5043620 (U.S. Nov. 1, 2021) ("[W]hen a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries."); *Reed v. IC Sys.*, 15-CV-279 (KRG), 2017 WL 89047, at *4 (W.D. Pa. Jan. 10, 2017) ("Plaintiff, as the object of [125] phone calls from Defendant which caused her wasted time and

annoyance, has suffered injury in precisely the form the FDCPA was intended to guard against," an injury "sufficiently concrete to confer standing." (citation and modification omitted)); *Stromberg v. Ocwen Loan Serv'g, LLC*, No. 15-CV-04719 (JST), 2017 WL 2686540, at *1, *6 (N.D. Cal. June 22, 2017) (recognizing as concrete injuries "expenditures of time and money" in ensuring that a mortgage was recorded). But where—as here—the related injury does not itself support standing, the alleged wasted time cannot alone meet the requirements of Article III. *See, e.g.*, *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (rejecting wasted time allegations for standing purposes where related alleged risk was hypothetical, not "certainly impending"). A plaintiff who has failed to assert a concrete injury supporting any of his other claims cannot clear the standing threshold by claiming wasted time; to allow otherwise would enable litigants to "manufacture standing merely by inflicting harm on themselves." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *cf. Lightfootlane v. Me. Dep't of Hum. Servs.*, 522 F. Supp. 2d 296, 298 n.2 (D. Me. 2007) ("If wasting time and causing effort were the tests for standing to assert a constitutional claim, the case or controversy limitation would be rendered meaningless.").

Nor do plaintiff's alleged confusion and legal fees support standing. Multiple courts have found alleged confusion to be insufficient for standing in the FDCPA context. *See, e.g.*, *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (holding stress and confusion—without accompanying physical manifestation—do not suffice for standing); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (rejecting "stress," "anxiety," and "uncertainty" as bases for FDCPA standing); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) (finding the plaintiff's injuries cannot create standing "[b]ecause bare allegations of confusion and anxiety do not qualify as injuries in fact") Finally, plaintiff's pleading that he risked incurring fees by hiring an attorney similarly does not support standing because the burdens of bringing a

lawsuit cannot be the sole basis for standing. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) ("[R]eimbursement of the costs of litigation cannot alone support standing.").[11]

As to risk of future harm, plaintiff alleges a "justifiabl[e] fear[] that, absent this Court's intervention," defendants will "continue to use abusive, deceptive, unfair and unlawful means in [their] attempts to collect the alleged [d]ebt and other alleged debts" and will ultimately cause plaintiff "unwarranted economic harm," "unwarranted harm to his credit rating," and "to be sued for a debt [p]laintiff does not owe." Compl. ¶¶ 97–100. As discussed above, however, the Supreme Court held in *TransUnion* that a mere risk of future harm—without allegations that the risk either is imminent or caused separate concrete harms—cannot be the sole basis for standing. 141 S. Ct. at 2210–11; Discussion II, *supra*. As addressed above, plaintiff has not alleged he suffered a concrete injury as a result of this risk of future harm (that is, he has not sufficiently alleged an emotional distress claim). Regarding the risk itself, plaintiff has not pleaded a sufficient likelihood that cognizable harms will occur to establish a concrete injury. While it does seem reasonably likely that defendants will contact plaintiff again, plaintiff has not persuasively pleaded that doing so would violate the FDCPA. *See Hunstein*, 2021 WL 4998980, at *17 (Tjoflat, J., dissenting) ("[T]he FDCPA did not mean to eliminate debt collection practices. It meant to eliminate *abusive* debt collection practices."). Plaintiff has not alleged harassing behavior by defendants, and I have already found that defendants' merely sharing plaintiff's debt information between themselves does not violate the Act. As for plaintiff's fear of being sued and of harm to his finances and credit score, plaintiff pleads no facts that support a reasonable expectation that these events will occur. *See In re FDCPA Mailing Vendor Cases*, 2021 WL 3160794, at *6 ("Such speculative claims of potential future harm cannot support . . . standing.").

Plaintiff therefore does not have Article III standing for his § 1692e claim.

---

[11] Indeed, FDCPA § 1692k(a)(3) separately provides for recovery of reasonable attorneys' fees and costs.

**C. I do not have jurisdiction to adjudicate plaintiff's NYGBL § 349 claim.**

Plaintiff's third and final claim is that defendants violated NYGBL § 349 by failing to exercise reasonable care in collecting the alleged debt. Compl. ¶¶ 145–56. I can exercise supplemental jurisdiction over a state law claim only if I have subject-matter jurisdiction over other, federal claims and if the federal and state law claims stem from a "common nucleus of operative fact." *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 280 (E.D.N.Y. 2021) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). As discussed above, I do not have subject-matter jurisdiction over plaintiff's FDCPA claims. *See supra* Discussion II. Therefore, I cannot exercise supplemental jurisdiction over plaintiff's NYGBL claim.

## CONCLUSION

For the above reasons, I find that plaintiff has not sufficiently pleaded a concrete, particularized injury for any of his claims and therefore does not have standing to sue in federal court. This case is remanded to the District Court, Sixth Division, Suffolk County. The clerk is directed to close the case.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:          December 06, 2021
                Brooklyn, New York